on behalf of the Petitioner Appellant, Mr. Eddington. I'm principally interested in answering whatever questions the Court has, but until you ask one, I will start by talking about the jury of misconduct and bias claim. Well, the first question I have is, what's been reserved in terms of the certificate of appealability? What issues do we have? The issues that were referred to the Marist panel were the redaction, the Miranda-Bruton severance question about the redaction of the preliminary hearing transcript and the related ineffective assistance of counsel claim about the failure of trial counsel to properly object. Well, here's my problem. As I look at the file, it seems to me that the COA certainly took care of the juror misconduct issue, but I don't see how we can entertain the IAC, the ineffective assistance of counsel claim. It was my understanding, and I can pull it from the file, that Mr. Eddington filed a request with the Court when it was first briefed asking that both his issues, as he viewed them, they were both categories. There was the Cabral preliminary hearing transcript testimony issue. And part of his argument in that was the ineffective assistance of counsel for failing to object, that he asked the Court for that pro se. And then when we were appointed, my colleague renewed that motion with the opening brief. I think those, they were presented as a global issue regarding the redaction, but as part of that issue is the ineffective assistance of counsel claim, because it came out in the state direct appeals attorney's effort to show that the attorney hadn't fact properly objected. The short of it is, as you say, you renewed the motion. You have a pending motion to expand the COA, which hasn't been ruled on. No, it hasn't. The short of it is, I suppose, we have to rule on it. So if we deny the COA, the issue is out. But if we grant the COA, then we should reach the merits of that issue. Is that what it amounts to? Yes, that is. And with respect to that, what's your response to the timeliness issue? Was that motion to expand filed timely? Mute under the circuit rule? Yeah. I didn't review that last time. My memory of it, it was, it would not have, the one that my colleague filed was filed with the opening brief. I know that there was a great number. This is a 99 case number for the court of appeals. So there was a great deal of sending it back, coming back. So there was far more than 35 days between the grant of the COA and her filing of that renewed motion. I don't know off the top of my head when his pro se motion was filed, whether it was in that time frame. But I can certainly send a letter telling you what my records show. Well, why don't you get to the due process merits issue? Well, as long as we're on the topic, I just, my only argument about the COA is that now that the court, the Supreme Court has issued its Miller-El decision, I think it was this term, I think it's very clear that the barefoot standard still applies. I'm sorry, it's very clear that what? The barefoot standard that we used to use for CPC is the certificates of probable cause. It's the same one for certificate of appealability. That it's just, you look at the threshold question. You don't reach the merits of the decision and just say would reasonable jurists disagree about it? Is it something that is worthy of further review? And I think under the circumstances of this case, those questions about the redaction and counsel's performance regarding those redactions clearly are worthy of further review. That brings me back to the main issue, and they all come together, which is the juror misconduct, the bias of particularly Ms. Salala, Sala? Sala. Sala. I'm going to start with there. This is an AEDPA case. It was filed September of 1996, so that statute applies. So the main focus, and I think the simplest way of looking at the facts in this case, is to take a look and study the California Court of Appeals decision, that together with the trial judge's inquiry and interview with the jurors. And it's very clear looking at the facts, as horrific as they are in this case, that this, that the state court's resolution of the juror bias claim was objectively unreasonable and it was not supported by the facts. So it fits both 2254 D1 and D2 prongs of the statute. And I say that. Well, let me ask you the question this way. What should the trial judge have done under the circumstances? I think he needed to declare a mistrial. I mean, it's very clear that what he. Is that the only option? In other words, obviously he thought he could save it by a very, very determined and, again, may I suggest, carefully handled voir dire. Your point is that the voir dire can't save it? I think given Mrs. Well, there are two parts to my. I think my first response is that it was not savable at that point. Given the questions that they had already asked regarding the request for readback so that we knew that they were focused on whether there was a sex offense. They were asking questions that said, I want to hear Mr. Cabral's preliminary hearing testimony. I want to hear the officer's testimony. I want to hear it. They actually asked for police reports, which they didn't get because it wasn't part of the evidence. They were focused on was this victim raped? Was it a felony murder? They even asked a question. My timing is that it happened. I'm not positive. But they even asked a question, I think it was either the morning of or during this inquiry into this misconduct, about where does the special circumstances finding, that allegation, fit into their assessment of first degree or second degree murder. So there was confusion as to liability, and it all centers, we know, without even talking to the jurors, that their focus is centered on the sexual offense allegation. That goes both to felony murder and it goes to the special circumstances finding. Now, the judge is faced with the jurors coming back on Monday. They got the case on Wednesday. They deliberated all day Thursday. Friday evening, Mrs. Sala says she hears this newspaper report, or she heard it Thursday evening, excuse me. She says something about it, I believe it was Friday morning, but during Friday's deliberations, in response to a specific question about what happened to all these other people. And then it doesn't come to light until Monday while they're in the, they've been having serious questions and discussions about that. So when the trial judge is faced with Mrs. Sala saying, I didn't know it was rape, that's the core part where I think he had no choice then to at least dismiss her from the trial. And Mr. Eddington, his attorney, asked for that. And it's clear, I think it's an objectively, actually I think it's just an unreasonable factual finding by the trial judge to say she was not biased at that point because she was clearly embarrassed. She'd realized she'd made something, she'd made a mistake. But rather than being candid about what she had said, she tried to cover up the key part, which is what she told the other jurors that the guy had been convicted, that he had pled guilty to rape. But the judge found, after completing the voir dire that he conducted, that she did not have actual bias and that the likely bias standard under California law wasn't present either. He made those findings and he put them on the record. Aren't those factual findings that have to be reviewed under 2250, 2254 E1? And aren't they entitled to deference to be overcome only if they're clearly erroneous? 2254 E1 is, I have it here somewhere, but I think it has more to do with whether I wanted to expand the record. But I would agree that they're entitled to deference. No, it says that the termination of a factual issue made by a state court shall be presumed to be correct. I apologize, I'm thinking of you too, I think. That's true, but you also have to look at the California Court of Appeals decision. And I think a fair reading of that decision regarding Mrs. Sala is that, you know, they point out and I think they find that she was not honest about that specific part. And the judge, when he, the trial judge, and I appreciate his, and you understand it better than I do because you're a trial judge normally, he's faced with a very difficult problem and he is trying to solve it. They've spent a lot of effort and energy and time in this case, and I appreciate that. But he's got a juror who is trying to deny the key part of her misconduct, which was saying it was rape that this co-defendant, at a time when the other jurors are focused on the sex offense. So by her being less than candid on that point, it may not have been a conscious effort. It's kind of dealing with my 7-year-old when she's done something wrong. You know, the first thing is, well, that's not exactly what happened. And I think the case law is very clear that when we're looking at the impartiality of a juror, the standard is, is this juror trying to stay? I mean, do they have a vested interest in staying on the jury? And this juror obviously was embarrassed. Her effort was to stay there, and she did that by diminishing and misstating what she told the other jurors. Yes, I think we understand your position. Why don't we hear from the State, and you've got plenty of time to respond. Okay, thank you. Good morning, Your Honor. John McLean, Deputy Attorney General. Your Honor, on this issue with respect to Ms. Sala, the trial court was the one that had the opportunity to look Ms. Sala in the eye and to look these jurors in the eye and to hear from them their assertions that they would properly not consider this evidence. This is not like a lot of the juror misconduct cases where the misconduct is discovered after the verdict. This is discovered before the verdict, and the court had an opportunity to take appropriate steps to deal with it. Ms. Sala clearly did misstate to the court her recollection or the fact that the rape charges, she had made a statement about the rape charges. Now, what about that? That's obviously a very strong point in favor of Ms. McClintock's approach. And the court of appeal, I think, appropriately recognized that that likely was a function of her embarrassment. When she made the statement, the record indicates that when she made the statement to the rest of the jurors, the jurors essentially in unison said, shut up, stop here, do not, you know, we can't consider that. And you can easily understand that that was embarrassing. And then to have it further go, have the court pulling her in there. And the United States Supreme Court in McDonough, and this court in Dyer v. Calderon, have said that there are going to be times when a juror makes a mistake like that, they may be embarrassed about bringing up a fact, and that that is not fatal as long as it does not suggest a lack of partiality. Counsel suggests that the appropriate step for the trial judge in the state proceeding was to replace the juror or alternatively declare mistrial. What's your response? I think that the court handled the matter appropriately in this situation because the record did not suggest that this juror was partial. It suggested that she had made a mistake. The court appropriately brought her in, questioned her, counsel questioned her. And this was not a situation in which the record suggests that there is anything in the record really to suggest that she was partial in some way or like some of these cases, Sassoonian and so forth, where there's some suggestion that maybe this is a juror that's not telling the truth because they want to stay on the panel, that sort of thing. So I think that under the circumstances, without anything in the record to suggest that she could not be impartial, that it was appropriate that the court handled it in the way they did here. It is an AEDPA case. The question is whether the state court's adjudication was contrary to or an unreasonable application of some clearly established United States Supreme Court precedent. I don't believe that's the situation here. The Court of Appeal certainly spent the bulk of their time addressing the misconduct issue under state law, but it was essentially an analysis of the same kind of harmless error issue that they ultimately, at the end of that, reached and reached on a federal standard as well. I think that the questions that were coming from the jury on Thursday and Friday, I think it's impossible to speculate about what it was they were going through. There was a question that they asked for a reread of some testimony on Thursday afternoon. They indicated on Thursday evening that they had reached a verdict as to one defendant. And then Friday afternoon, they asked for a new verdict form. I think it's just impossible to speculate on what was going on in that jury room. The one thing that the record is clear about is that each and every one of these jurors that were brought in assured the court that it would not impact the verdict, that they could keep that evidence out of their consideration. I think that's the only thing that's really clear from the verdict, and I think that the trial court had the opportunity to look at the credibility of those jurors. And I think that that finding is entitled to deference. Anything further? Let me ask you a question. State can fall in opposition to the motion to expand the COA. You know, the usual inference from a failure to oppose the motion is that it's consent. But I understand, you know, the state has a heavy burden in terms of the number of habeas cases it has to defend. But you have a position on the COA? Your Honor, I believe that the COA, when the COA was initially in 99, I believe that we did file some opposition to it. And I know in connection with the renewed motion we indicated, we filed a letter, I think, indicating that. I haven't seen it. But you do oppose it, is my question, the expansion? I think, Your Honors, whether this COA, in any event, I think that the claim would be meritless, even if this court would support it. Well, it sounds to me as if you're waiving any rights with respect to the COA. No, I'm not waiving any rights with respect to it, Your Honor. Well, then you'll have to explain to me what were you about to say about what was in the letter. The letter, I believe, said that we were, that, my recollection is the letter said we opposed the COA, but in any event, if the court granted the COA, we were not intending to file further appellees. Because in your view, it was clearly meritless. Clearly meritless. All right. Thank you. All right. Thank you, counsel. Ms. McClintock, you have reserved time. Okay. My opponent has talked about the deference entitled, as this panel has, talked about the deference to the trial court and its factual findings. What the trial court's discussion in his interview and his findings were all pre-verdict. Nowhere in the trial court's findings was there any discussion of even, let me back up. Procedurally, after the verdict was reached, both defendants filed a motion for mistrial, for a new trial, based on the same claims of misconduct and bias. In the proffer that the defendants made there, there was contact, one of the attorneys, and I believe it was Mr. Annington's, but I may be wrong. But there was contact with Mr. Mendez, the man who had pled guilty, with his attorney. And it was their understanding that Mendez had pled guilty essentially like an Alford plea, that he denied having committed the offense, but that he was taking this plea offer in order to diminish, to get the advantage of the plea. He was one of the co-defendants who was originally charged with first-degree murder, basically special circumstances murder. Those charges were dropped. He had a specific determined eight-year sentence entitled, according to what the newspaper report or TV report was, to half-time credit. So there is an aspect that was raised here of confrontation and Mr. Annington's right to confront and provide that information. The trial judge failed to deal with that. He just denied the motion for new trial on the same basis he did before, which is, as we have discussed, was basically based on the juror's good faith. They made a mistake, but they acted in good faith. And if you take a look at this Court's decision, say, in Jeffrey 5, which was decided before the findings and recommendations, Jeffrey's 5, the en banc court, says, you know, the juror's good faith is not enough in these juror misconduct claims. That doesn't decide it. You'll see the same thing in other contexts, for example, in shackling claims, where the jurors say, well, yeah, I saw the person shackled, but it didn't have any effect. That is not enough. I think what you have to do, and this is where you cannot rely solely on either the state court of appeals or the trial judge's factual findings, is the court has to make an independent assessment of the prejudice. You have to look at the facts that the state court of appeals found and look at what the record shows the jury deliberations were about  And I think if you take a look at the nature of the defense that Mr. Eddington presented and the state of the evidence, the evidence, the state court of appeals prejudice analysis was simply, there was overwhelming evidence of guilt. There's no way that that is correct, that is objectively unreasonable as a prejudice analysis, because if you take a look, for example, what the trial judge said at the close of the prosecution's case, there was a motion for essentially a judgment of acquittal on the special circumstances and on the weapons used as to Mr. Eddington. And the trial judge said, you know, the evidence goes on both sides of both those points. But if the jury finds the witnesses for the prosecution credible, there's sufficient evidence. And we have no objection. I mean, there's no sufficiency of the evidence issue raised here. Clearly, the evidence was sufficient to support the convictions. But you cannot objectively, reasonably say the evidence was overwhelming of Mr. Eddington's guilt. There's a great deal of discussion from the witnesses, prosecution included, that the sex acts that took place throughout the evening were consensual. Then you get down to, basically it comes down to Mr. Eddington, who's got a damaged brain, does not remember everything, saying that it was the prosecutor, excuse me, witness, Mr. Urqueso, I believe, who committed the murder. And then Mr. Urqueso's version of events is more detailed, but basically reverses the roles. So there is an overwhelming evidence. It came down to really a credibility assessment that the jury had to make as to which of those two versions of events did they really believe. So when it comes down to that, there is sufficient evidence. I mean, there is some physical evidence that shows Mr. Eddington was at the crime scenes. He admits to being at the two locations, whether she was initially dropped off and then where she was taken near the reservoir. We don't know when she died. We know she didn't drown. So the forensics evidence doesn't help show, which typically is in these kind of cases, usually forensics pins point it down to a specific time so you can make it a more independent assessment of prejudice. Here it's all over the place. You've got each of the prosecution witnesses talking about different groupings of men having consensual sex. There's only one act that is reported, and it involves a different person. I'm not sure if it was the younger Mr. Mendez or Rogers, Sheridan Rogers, getting upset. And that's when the sex ended. And then at that point, the victim and everybody else is drunk as skunks. I mean, how these folks stood up, I have no idea. So our argument is that the California Court of Appeals prejudice decision is objectively unreasonable. We are bound by their factual statements. I have no problem with their factual statements, because I think it's just unrealistic to say that there's overwhelming evidence. Well, we'll take a very close look at the language of the California decision again and keep in mind your argument. I think that's the bulk of my argument. If there are any other questions, I'd be happy to try to answer them. I have a question. If there's Supreme Court authority that a trial judge's fact findings as to the impartiality of prospective jurors as a result of voir dire conducted in the process of impaneling those jurors is a factual determination and not a mixed determination of law and fact, would you find that that is analogous to a fact finding of existing jurors who are being questioned about possible misconduct and bias? Because I don't want to set you up. There is a case. Patton v. Young says in very explicit language that the determination of a trial judge at the voir dire stage is a determination of fact entitled to the presumption of correctness. I would agree that the trial judge's assessment of Mrs. Sala is entitled to a presumption of correctness. I would also argue, though, that that presumption is overborn, is taken care of when you carefully look at her statements, and that is recognized by the California Court of Appeals decision when it and its factual findings are also entitled to a presumption of correctness under the ADPA. When it says that she misled the judge, the language is more gentle than that. I'm not supporting that. But the issue isn't necessarily what level of ultimate or total candor she fell short of displaying. The question is whether or not she was biased or the panel became tainted. And if the trial judge's determination is presumed to be correct and the Court of Appeals decision is presumed to be correct, even though it finds that there was some level of evasiveness, how does it get to be an unreasonable application? Well, the decision as to her good faith or her mindset may be a factual finding. The decision about whether it's unreasonable, whether it had a substantial injurious effect on the verdict, has to do with the prejudice of given what she said and the evidence, the extrinsic evidence that she brought to the jury room,  I think that's a question of law. That's a question of law. At best, it's a mixed question, but I think of the case law. If you look at, for example, Jeffries 5, and there's a case I know of because it came out of our office, Mancuso, where the court very clearly says, look, and Mancuso is pre-ADPA, so slightly different, but it says our jobs as federal judges is to look independently at this prejudice analysis and decide did it have a substantial injurious effect on the verdict. I think the only thing that the ADPA does differently, the layer it adds, is once you have done that, you ask the secondary question, was the state court's decision to the contrary objectively unreasonable? I think the only basis for the state court's decision, I've already said this, is that there was overwhelming evidence of guilt, and I think that is objectively unreasonable. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Tashima, Matz